# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 1:10MJ00061 |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RONALD WADE SMITH, JR.**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant seeks review of the magistrate judge's order committing him for the purpose of a competency evaluation, pursuant to 18 U.S.C.A. §§ 4241(b), 4247(b), (c) (West 2000 & Supp. 2009). The defendant does not object to a competency evaluation, but desires that it be conducted on an outpatient basis without detaining him. The government requests that the evaluation be conducted at a Bureau of Prisons facility, but in any event has moved the court to detain the defendant because he is a flight risk. For the reasons that follow, I will deny the defendant's Motion for Review.

I

Before resolving the merits, I must first rule on the defendant's motion that I recuse myself because I previously presided over a civil case involving the defendant.

The defendant is charged in this criminal case with knowingly making and using a false document in a matter within the jurisdiction of the executive branch of the government, in violation of 18 U.S.C.A. § 1001(a)(3) (West 2000 & Supp. 2009). It is alleged that the defendant operated a Ponzi scheme called the Safeguard 30/30 Investment Club, by which he promised investors that he would invest their money in foreign currency exchanges with a return of 30 percent each 30 days. The government contends that at least $800,000 was received from investors since January of 2009, of which approximately $408,000 was used by Smith and his wife for their personal benefit. When the bank account was seized on January 29, 2010, it had a balance of only $2,690.84.

The government charges that Smith prepared and sent to his investors false e-mails, telling them that the U.S. Securities and Exchange Commission had investigated his investment club and cleared it.

Prior to the government's charge in this criminal case, the U.S. Commodity Futures Trading Commission ("CFTC") brought a civil action in this court against Smith, which case was assigned to me. Based on the evidence presented in that

action, I entered a preliminary injunction against Smith on March 5, 2010, finding that there was probable cause to believe that he had violated the Commodity Exchange Act in connection with the Safeguard 30/30 investment club. *U.S. Commodity Futures Trading Comm'n v. Smith*, No. 1:10CV00009 (W. D. Va. Mar. 5, 2010).

The fact that I presided over this earlier case involving the same general subject matter as the present criminal case, and even though I found adversely to the defendant in that case, does not justify recusal, because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). I have no extrajudicial source of information regarding the defendant or the facts of this case and thus the applicable recusal statute, 28 U.S.C.A. § 455(b)(1) (West 2006), is not implicated. *See United States v. Parker*, 742 F.2d 127, 128 (4th Cir. 1984).

Accordingly, the request for recusal is denied.

II

The defendant was arrested based on the government's Complaint on March 10, 2010, and received an initial appearance before the magistrate judge that day, at which the government moved for detention under the provisions of the Bail Reform

Act, 18 U.S.C.A. §§ 3141-3156 (West 2000 & Supp. 2009). On the motion of the defendant, a detention hearing was continued until March 15, 2010. At that hearing, the government also moved for a competency evaluation. After considering the evidence presented, the magistrate judge ordered the defendant committed to the Bureau of Prisons for a competency evaluation.

On March 26, 2010, the defendant moved the magistrate judge for reconsideration of the order of commitment, on the ground that his family members were willing to pay for an outpatient evaluation, as an alternative to being incarcerated and evaluated at a Bureau of Prisons facility. The magistrate judge held a hearing on this motion on March 30, 2010, at which further evidence was received. At the conclusion of the hearing, the magistrate judge denied the defendant's request and the defendant then filed the present Motion for Review, which was heard on April 8, 2010.

At the hearing on the present motion, the defendant presented the testimony of his father-in-law, Charles Duty. In addition, the parties requested that I review the testimony and exhibits presented at the hearings before the magistrate judge, which I have done. Accordingly, the defendant's motion is now ripe for decision.

Because the magistrate judge's ruling implicates the detention of the defendant, I will consider the request for release de novo, under the provisions of the Bail

Reform Act, 28 U.S.C.A. § 3145(b), rather than review the magistrate judge's order under the "clearly erroneous" standard of Federal Rule of Criminal Procedure 59(a).

III

While 18 U.S.C.A. § 4247(b) permits the court to commit a pretrial accused for a reasonable period of time for a competency evaluation, the court is not required to order commitment for such an evaluation and an outpatient evaluation may be preferable, particularly in light of the presumption of innocence. *See In re Newchurch*, 807 F.2d 404, 408-409 (5th Cir. 1986); *United States v. Weed*, 184 F. Supp. 2d 1166, 1171 (N.D. Okla. 2002). Defense counsel represents that there are seven qualified evaluators in this geographical area who might examine the defendant on an outpatient basis. The defendant requests that in the meantime he be released to the custody of his father-in-law, Mr. Duty. Duty has testified that he is willing to post a substantial bond for the defendant's release, secured by Duty's real estate located in this judicial district.

The government does not dispute that an outpatient evaluation might be available, but contends that the defendant is a flight risk and should be detained. The government has the burden of proving that risk by a preponderance of the evidence. *United States v. Araneda*, 899 F.2d 368, 370 (5th Cir. 1990).

The evidence presented shows as follows.

On February 23, 2010, federal agents conducted a search of Smith's home. During the search, Smith told the agents that his name was copyrighted and that the agents were required to pay him $50 million for each instance his name appeared in a government document. Smith also stated that he wanted to show the agents documents that proved "he wasn't born within the seven square miles of Washington, D.C., and therefore he wasn't a citizen of the United States." (Mot. to Recons. Hr'g Mar. 30, 2010.) The agents' discussion with Smith ended after Smith demanded to know the "identity of his accusers" and the agents declined to tell him. (Criminal Compl. 3.)

As part of its lawsuit, the CFTC subpoenaed Smith and his wife for depositions and a copy of the transcript of Smith's deposition was introduced into evidence in these proceedings. Smith commenced his deposition by refusing to take an oath to tell the truth. His response to initial questions posed by counsel for the CFTC was, "I conditionally accept your offer upon bona [sic] proof of claim that you have the authority to ask me that question." (Probable Cause Hr'g March 15, 2010, Gov't Ex. 2, p. 3.) Smith repeated this statement throughout the deposition.

Pressed to explain what this meant, Smith stated:

> I'm saying that I have not waived venue, I have not authorized you to have any jurisdiction over this matter in one, any way, shape or form. I am a flesh and blood, natural born, living person on the land in the State of Virginia and in no way, shape, or form am I an employee of the Federal government or am I an employee of the Federal corporation under United States Code Title 28, Section 3002, Subsection 15, Section A where the United States is a corporation and it's a for profit corporation as spelled out there.

(*Id.* at 4-5.)

In response to other questions, Smith stated this court "absolutely" did not have authority over him because "the Court has authority based on the Constitution" and he "was not party to the signature of the Constitution; therefore, the Constitution doesn't apply to me unless I choose to sign it." (*Id*. at 8.) Smith continued, stating that his name in capital letters, "RONALD WADE SMITH," was a legal fiction created by the United States. (*Id*. at 10.) Smith noted that he had copyrighted his name and that a "private bond that is on record at the courthouse in the County of Buchanan for the sum of ten billion dollars" gives him a "superior claim" over "anything that has to do with the name of Ronald Wade Smith, Jr., that pertains to me as a physical being." (*Id*. at 12.)[1]

---

[1] Some of the defendant's beliefs appear to be related to the political-economic theory called Redemptionism, which contends that the United States government has been in bankruptcy since 1933 but still seeks to extract money by creating "strawmen" out of citizens, whose names are spelled in all capital letters, as contrasted to real "flesh and blood persons," whose names are spelled only with initial capital letters. *See State v. Lutz*, No. 80241, 2003 WL 152837, at *3 (Ohio Ct. App. Jan. 23, 2003) (explaining Redemptionism).

During the deposition, Smith estimated that the investment club trading account had reached to more than $18 million. The value had dwindled, Smith said, to $15.7 million shortly before Smith "placed" the money "with a private individual in China." (*Id*. at 53.) Smith said he did not have the name of the individual in China.

At the deposition, Smith said that while he had not earned any money in 2010, he had earned approximately $700,000 in connection with the investment club in 2009, along with $100,000 in cash from another source. Smith was unable to account for the whereabouts of the $800,000 and he could not tell the CFTC how much money was in a bank account in the name of a corporation called Tigre Systems, Inc., into which he typically transferred investment funds.

Smith also told the CFTC that his net worth was $28 billion and that once Safeguard investors were paid, he would earn $5.6 million from the club's trading account. In addition, Smith purported to be the sole managing member of a limited liability corporation called Homer Securities. Smith estimated this entity was worth more than $4 trillion due to its contracts with the U.S. government and various African countries.

Soon after the deposition, Smith filed a response to CFTC's Complaint. In the document, which Smith signed under oath, Smith stated that there was no evidence

that he was an American citizen. Smith stated that as "an official of a sovereign foreign jurisdiction," he denied ever swearing "allegiance to or volunteer[ing] to submit to the UNITED STATES OF AMERICA, its agents or political subdivisions, or any jurisdiction foreign to" him. (Probable Cause Hr'g March 15, 2010, Gov't Ex. 1, p. 2.) In addition, he stated that the United States was "inherently without the ability" to make him appear before "any court." (*Id*. at 3.)

Smith's wife, Angela, also testified that she believed that the United States government does not have authority over her. Both Angela and her father, Charles Duty, testified that they believe the investment club trading account contained millions of dollars due to Smith's investing abilities. Duty, who gave his life savings to Smith, said that he was confident Smith had properly invested his money and that he believed Smith's promise of a 30 percent return every 30 days. Duty also testified that based on Smith's statements to him, he believed that the account was now empty because the government had seized $15.4 million from it, even though the government has advised him to the contrary.

IV

I find, based on the factors set forth in 18 U.S.C.A. § 3142(g), that there is a serious risk that the defendant will flee if not detained and that there is no condition or combination of conditions of release that will reasonably assure his appearance. The defendant clearly does not accept the authority of the court over him. While he denies current access to funds, the facts show that he has received large sums of money in the recent past from his investors and that a substantial balance of that money is unaccounted for. These funds could be used by Smith to facilitate his unlawful flight.

While the defendant proposes that his father-in-law, Charles Duty, serve as his custodian, I find that Mr. Duty is unsuitable for such a role. Both Duty and Angela Smith appear to have fully accepted the defendant's outlandish theories and I believe they are substantially under the defendant's control.

Because I find that Smith must be detained in any event, his release for an outpatient competency evaluation is not appropriate.

## V

For the foregoing reasons, it is **ORDERED** that the Motion for Review (DE 29) is DENIED.  The Marshals Service is directed to carry out the magistrate judge's commitment order of March 16, 2010.

        ENTER: April 14, 2010

        /s/ JAMES P. JONES
        Chief United States District Judge